Mark E. Ellis - 127159
Anthony P. J. Valenti - 284542
ELLIS LAW GROUP LLP
740 University Avenue, Suite 100
Sacramento, CA 95825
Tel: (916) 283-8820
Fax: (916) 283-8821
mellis@ellislawgrp.com
avalenti@ellislawgrp.com

Attorneys for Defendant STATES RECOVERY SYSTEMS, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER FRIERSON,<br><br>    Plaintiff,<br><br>v.<br><br>STATES RECOVERY SYSTEMS,<br><br>    Defendant.. | Case No.: 2:17-CV-00781-WBS-EFB<br><br>**DEFENDANT STATES RECOVERY SYSTEMS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: June 12, 2017<br>Time: 1:30 p.m.<br>Courtroom: 5, 14th Floor<br>HONORABLE WILLIAM B. SHUBB |

## I. INTRODUCTION

Rather than addressing how Defendant's alleged credit reporting constitutes a <u>materially</u> false, deceptive, or misleading representation in violation of 15 U.S.C. § 1692e, Plaintiff's Opposition asserts a confusing argument without citing a single case that stands for the proposition that Defendant's <u>accurate</u> reporting of two distinct transactions (albeit under one SMUD account number) somehow amounts to an improper "double reporting" of the two separate debts assigned to collections.

## II. REPLY

### A. Plaintiff Concedes The Total Amount Allegedly Reported By Defendant Was Accurate.

It is undisputed that the total amount of the debts which SMUD assigned to Defendant for collection was $127.92. (Complaint, ¶ 8.) It is also undisputed that both of the debts related to one <u>SMUD</u> account number (ending in 2013) for one physical address (on Mack Road in Sacramento). (Opposition, p. 4.)

However, SMUD referred the $127.92 as two separate <u>collection</u> accounts with two different <u>collection</u> account numbers (3033182 and 3033183) based on the two separate dates of service (from 06/26/15 to 07/27/15 and from 07/28/15 to 08/28/15) and the two separate amounts owed ($58.06 and $69.86, respectively). (Declaration of Cindy Marler, **Exhibit A**, p. 2.)

Plaintiff contends Defendant's reporting of the accounts in such a manner was inaccurate because it was contrary to the way SMUD treated Plaintiff's account. (Opposition, p. 7.) Not only is this argument not supported by the allegations, but the Ninth Circuit has held that any communication which accurately states the <u>total</u> amount owed does not, <u>as a matter of law</u>, constitute a false, deceptive, or misleading representation for purposes of liability under 15 U.S.C. § 1692e. *Donohue v. Quick Connect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010).

Consequently, Plaintiff's Complaint fails to state facts sufficient to constitute a cause of action under 15 U.S.C. § 1692e. Moreover, there is no "set of facts," consistent with those already pled, which would support Plaintiff's claim that Defendant violated 15 U.S.C. § 1692e. Therefore, Plaintiff's Complaint should be dismissed <u>without</u> leave to amend. F.R.C.P. 12(b)(6).

///

///

### B. Plaintiff Fails To Demonstrate How Defendant's Alleged Reporting Constitutes A Materially False Misrepresentation Under the "Least-Sophisticated-Consumer" Standard.

Because materiality is an ordinary element of <u>any</u> federal claim based on a false, deceptive, or misleading statement, a purportedly false, deceptive, or misleading statement is <u>not actionable</u> under 15 U.S.C. § 1692e unless it is <u>material</u>. *Donohue, supra,* 592 F.3d at 1033. In other words, a statement cannot, <u>as a matter of law</u>, mislead someone unless it is material. *Id.* (*citing Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009).

By imposing the element of materiality, courts ensure the purpose of the FDCPA is not stretched to create liability as to statements that are immaterial. *Donohue, supra,* 592 F.3d at 1033. As the Ninth and Seventh Circuits have pointed out, this materiality requirement is a corollary to the well-established proposition that a statement does not violate the FDCPA unless it would mislead the "unsophisticated consumer." *See, e.g., Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009).

In determining whether a statement qualifies as misleading, the federal courts employ an objective "least-sophisticated-consumer" test. *Miller, supra,* 561 F.3d at 592 (*citing Kistner v. Law Offices of Michael P. Margelefsky LLC*, 518 F.3d 433, 438-439 (6th Cir. 2008). "This standard protects naïve consumers while <u>preventing liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care</u>." *Miller, supra,* 561 F.3d at 592 (internal quotations omitted; emphasis added).

However, Plaintiff's Opposition wholly fails to address this standard, instead suggesting that this "credit reporting case" is somehow exempt from such an objective analysis. (Opposition, pp. 7-8.) But this <u>is</u> an FDCPA case, after all, and Plaintiff's own legal authority undermines her argument.

In one of the cases cited by Plaintiff, *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F.Supp.2d 492 (D. Md. 2004), the court applied the "least sophisticated consumer" standard to determine whether a violation of 15 U.S.C. § 1692e(2)(A) occurred. Indeed, the Ninth Circuit has consistently held that whether conduct violates 15 U.S.C. § 1692e requires an objective analysis under the "least-

- 2 -

sophisticated-consumer" standard. *Donohue, supra*, 592 F.3d at 1033.

As explained in Defendant's Memorandum of Points and Authorities, even if Defendant's alleged reporting was somehow "technically false" (which it was not), it still would not have misled the hypothetical "least sophisticated consumer" and, therefore, is neither material nor actionable under 15 U.S.C. § 1692e. *Donohue, supra*, 592 F.3d at 1033-1034.

The FDCPA's "rule against trickery" does not require that statements be communicated at a sixth-grade level (*see Miller, supra*, 561 F.3d at 594), but even a sixth-grader could add the two different amounts allegedly reported by Defendant ($58.06 and $69.86) and confirm they equal the undisputed total amount which Plaintiff owes to SMUD ($127.92).

### C. Defendant Did Not "Double Report" Plaintiff's Underlying Debts.

In an attempt to avoid the inevitable dismissal of her Complaint, Plaintiff claims, without citation, that Defendant's conduct "double reported" the SMUD debts to the credit reporting agencies, but she is only grasping at straws.

In one of the "double reporting" cases cited by Plaintiff, the defendant (RMA) reported the plaintiff's total debt twice. *Akalwadi, supra*, 336 F.Supp.2d at 498. The *Akalwadi* court summarized the relevant factual allegations as follows:

> "During this time, RMA reported Akalwadi's debt to Equifax, a consumer credit reporting agency. (Def.'s Mem. Supp. Summ. J. at 2.) An October 3, 2000 Equifax report shows that, in October 2000, RMA reported a debt owed to Enterprise in the amount of $5,729 and a balance associated with the debt of $6,821. The account number listed on the Equifax report is 325777142. (Compl. at Ex C.) On July 11, 2002, Akalwadi obtained a copy of his credit history from an online source (ConsumerInfo.com). *This report of Akalwadi's credit history lists Equifax reporting two collection accounts with RMA totaling $10,142*. (Compl. at Ex. C.) **Both collection accounts are listed for the same amount, $5,071**. (Compl. at Ex. C.) The first collection account indicates that it was opened in March 2000 and lists an account number 325777142. (Compl. at Ex. C.) The second collection account indicates that it was opened in April 2002 and lists the same account number that appeared in the May 9, 2002 RMA letter to Akalwadi (67738141030) (Compl. at Ex. C.) **This erroneous "double reporting" is undisputed and resulted from two different RMA offices reporting the same debt to Equifax**. (Def.'s Mot. for Summ. J. at 2)."

*Id.* (emphasis added).

- 3 -

In *Akalwadi*, the court found that RMA's reporting constituted a false representation of the character and amount of Akalwadi's debt because RMA "double reported" the same debt twice. *Id.* at 503. In the other (unpublished) case cited by Plaintiff, the defendant also "double reported" the same $705 debt twice. *Gustafson v. Experian Information Solutions Inc.*, 2014 WL 2115210, *1 (C.D. Ca. 2014).

The present case is distinguishable, of course, because Plaintiff does not allege that Defendant reported the same debt twice. Rather, Plaintiff claims Defendant allegedly reported two distinct debts instead of adding them together and reporting only one combined debt. (Complaint, ¶¶ 10, 17, 19.) Contrary to Plaintiff's assertions, however, Defendant's reporting was consistent with the manner in which SMUD assigned the debts to Defendant for collection. Accordingly, the cases cited in Plaintiff's Opposition are completely distinguishable and utterly inapposite for purposes of ruling on Defendant's instant motion.

**D.    Plaintiff Fails To Satisfy The Pleading Requirements Because She Cannot Establish That She Suffered Any Harm As A Result Of Defendant's Alleged Conduct Or That Her Claims Are Governed By The FDCPA Or RFDCPA.**

Citing to *Pace v. Portfolio Recovery Associates, LLC*, 872 F.Supp.2d 861, 867 (W.D. Mi. 2012), Plaintiff asserts a failure to pay a legitimate debt owed generally will result in a negative impact on one's credit report. (Opposition, p. 8.) However, Plaintiff also asserts that "[b]y falsely turning one collection account into two collection accounts, Defendant further negatively impacted Plaintiff's credit report in an attempt to induce payment." (*Id.*) Notably, there is no factual support for this proposition in her Complaint or her Opposition; Plaintiff has utterly failed to allege how Defendant's "split reporting" caused her to suffer any actionable harm.

Plaintiff offers no factually-supported allegations that, by reporting the two smaller, delinquent accounts assigned for collection by SMUD ($58.06 and $69.86), Defendant somehow negatively impacted her credit score (more than it otherwise would have had Defendant combined the two separate accounts into one larger, delinquent account).

Plaintiff's conclusory allegation of harm amount to precisely the type of "unadorned, the-defendant-unlawfully-harmed-me-accusation" denounced by the United States Supreme Court.

- 4 -

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such naked conclusions, devoid of factual enhancement, simply do not satisfy the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure. *Id.*

Plaintiff also fails to set forth any facts to support the "jurisdictional" elements of her FDCPA claim. "In order to establish a claim under § 1692e: (1) plaintiffs must be a 'consumer' as defined by 15 U.S.C. § 1692; (2) the 'debt' must arises out of transactions which are 'primarily for personal, family or household purposes' (see 15 U.S.C. § 1692a(5)); (3) defendant must be a 'debt collector' as defined by 15 U.S.C. § 1692a(6)12; and (4) defendant must have violated § 1692e's prohibitions. ***The absence of any factor is fatal to plaintiffs' claims under § 1692e.***" *Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F.Supp.2d 914, 926 (N.D. Ohio 2009).

Obviously, SMUD provides electricity services to both individuals and businesses alike, and Plaintiff alleges no facts to support her conclusory allegation that the electrical services which SMUD contracted to provide to her at the Mack Road property were "primarily for personal, family, or household purposes." (Complaint, ¶ 7.) Furthermore, she alleges no facts to support her other "jurisdictional" allegations, including that she is a "consumer" and that Defendant is a "debt collector." (Complaint, ¶¶ 4-5.)

As explained by the United States Supreme Court, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal, supra*, 556 U.S. at 678. Therefore, Plaintiff has failed to state a claim under the FDCPA, and her Complaint should be dismissed pursuant to Rule 12(b)(6). *Whittiker, supra*, 605 F.Supp.2d at 928 ("Construing in Kimball's favor the Complaint and documents properly before the Court on defendants' Rule 12 motions, there is nothing to support a finding that Kimball's debt is primarily for personal, family, or household purposes. This failure is fatal to Kimball's FDCPA claims…").

Furthermore, if Plaintiff omitted facts to support the "jurisdictional" elements of her FDCPA claim, she whole-heartedly abandoned any allegation of the "jurisdictional" elements of her RFDCPA claim under Civil Code § 1788.17. (*See* Complaint, ¶ 27) ("Defendant has violated the FDCPA and has therefore violated § 1788.17 which states that violations of 15 U.S.C. § 1692b through 15 U.S.C. § 1692j are violations of California Civil Code § 1788.17.").

DEFENDANT STATES RECOVERY SYSTEMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

Civil Code § 1788.17 states: "Notwithstanding any other provision of this title every *debt collector* collecting or attempting to collect a *consumer debt* shall comply with the provisions of Sections 1692b to 1692j…" Thus, a RFDCPA claim brought pursuant to Civil Code § 1788.17 has slightly different "jurisdictional" elements than those required to establish a prima facie violation of 15 U.S.C. § 1692e.

For instance, the FDCPA and the RFDCPA define the term "debt collector" differently. *Cf.* 15 U.S.C. § 1692a(6); Civil Code § 1788.2(c). Likewise, the FDCPA defines the terms "consumer" and "debt" separately while the RFDCPA uses the terms "debt" and "consumer debt." *Cf.* 15 U.S.C. § 1692a(3), (5); Civil Code § 1788.2(d), (f).

In short, Plaintiff's Complaint alleges, in conclusory fashion, that Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), but it does not allege that Defendant is a "debt collector" as defined by the RFDCPA, Civil Code § 1788.2(c). Similarly, Plaintiff does not allege that the subject debts constitute "consumer debts" arising from a "consumer credit transaction" as required by the RFDCPA Civil Code § 1788.2(e), (f). Therefore, she has failed to allege each element of her RFDCPA claim under Civil Code § 1788.17.

## III. CONCLUSION

Plaintiff's Opposition attempts to shepherd her FDCPA claims under the umbrella of "double reporting." However, this is not a case of "double reporting." Rather, it is one of "split reporting." As judicially admitted by Plaintiff, Defendant reported the two distinct debts (in the same manner as they were assigned for collection) which, in total, equal the undisputed amount allegedly owed by Plaintiff to SMUD.

Consequently, the total amount reported by Defendant was accurate, and, Defendant submits, not actionable as a matter of law. *See Donohue, supra,* 592 F.3d at 1033. As explained above, even if the way Defendant reported the debts could be argued as "technically false" (although it was not), it would still not be actionable because it would not have misled the "least sophisticated consumer" and is, therefore, immaterial as a matter of law. *Id.* at 1033-1034.

Plaintiff simply has not advanced any argument that the manner in which Defendant reported the debts caused her actionable harm or materially affected her ability to intelligently decide how to

- 6 -

proceed with respect to the debts, and, in fact, Defendant's "split reporting" may well have assisted Plaintiff should she have elected to dispute only one of the two bills. *Id.* at 1034.

Finally, Plaintiff failed to state a RFDCPA claim under Civil Code § 1788.17 because she did not allege the proper "jurisdictional" elements, and because her RFDCPA claim is wholly derivative of, and dependent upon, her defective FDCPA claims. *Cf. Renick v. Dun & Bradstreet Receivable Management Services,* 290 F.3d 1055, 1058 (9th Cir. 2002).

For all of the foregoing reasons, Defendant respectfully asks this Court to grant its motion to dismiss Plaintiff's Complaint <u>without</u> leave to amend.

Dated: June 5, 2017

        ELLIS LAW GROUP LLP

        By */s/ Anthony P. J. Valenti*
         Anthony P. J. Valenti
         Attorney for Defendant
         STATES RECOVERY SYSTEMS, INC.